## NEVENS v. UNITED STATES.
### No. 13978.

United States Court of Appeals
Ninth Circuit.
April 30, 1954.

Lenske, Spiegel, Spiegel, Martindale & Bloom, Reuben G. Lenske, David M. Spiegel, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Eugene, Or., Victor E. Harr, Asst. U. S. Atty., Willis A. West, Sp. Asst. to U. S. Atty., Portland, Or., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant as plaintiff in the court below, had judgment against the United States in an action under Title 28 U.S.C. A. § 1346(a) (2), current version of the old Tucker Act, to recover compensation for the reasonable rental value of two electric welders used by the Pasco Naval Air Station. The district court found such compensation should be the sum of $750, and gave judgment accordingly. Asserting that he should have recovered a greater amount, plaintiff took this appeal.

As the matter is presented here, two factors are involved: the reasonable rental value per month; and the period during which the Government used the welders. The court found that plaintiff acquired the property on October 4, 1944, at which time the welders were already in the possession of and being used by the Naval Air Station. It found that the station "used the aforesaid electric arc welders for a period which is indefinite * * * and I find that the use of said welders did not extend into the year 1946, but was terminated some time prior thereto."

Appellant asserts that in arriving at the sum of $750 which it awarded, the

court underestimated not only the fair monthly rental value, but the period of use as well. With respect to the period for which plaintiff should be compensated, it is urged that it should be one beginning in February, 1943, and extending to July, 1946. The welders were originally the property of one Owen. In February, 1943, the Naval Air Station took them from Owen for use by the Navy. In September, 1944, "in lieu of a foreclosure suit", Owen gave a bill of sale of the welders to Reconstruction Finance Corporation which had had a mortgage on them. Thereafter, and on October 4, 1944, the date previously mentioned, the Reconstruction Finance Corporation transferred the welders to the plaintiff. In January, 1945, Owen assigned to plaintiff all his interest in the welders "including any and all rental claims for the use thereof."

■ It appears to be appellant's theory that he may recover as assignee of Owen the compensation owing for use during the period of Owen's ownership. So, he says, the period for which compensation should be allowed should begin as of February, 1943. However, the attempted assignment by Owen of his "rental claims" was wholly ineffective under the provisions of § 203 of Title 31 U. S.C.A., making such assignments void, (with certain exceptions not here applicable).

■ While appellant also attacks the court's finding that the air station's use of the welders was terminated some time prior to 1946, he does not predicate this upon any evidence in the record as to just how long that use continued. Appellant's contention is based upon the agreement, stated in the pretrial order, that the Naval Air Station "was available for repair of planes or parts thereof on a 24-hour basis continuously until July, 1946." He argues that since it was shown that the welders had been used at the station at a prior period, it must be inferred, or presumed, that such use continued as long as the station was "available for repair of planes". This, it is said, is because of the rule that it is to be inferred "That a thing once proved to exist continues as long as is usual with things of that nature."[1] We perceive nothing here to require the trial court to say that the use of a rented machine by an outfit such as the Naval Air Station had any "usual" period of continuance, or that it was usual that rented machines would be kept until the user went out of business. Referring to the rule upon which appellant relies, Mr. Wigmore says: "The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end."[2] The Japanese surrender on August 14, 1945, unquestionably must have slowed down this World War II repair enterprise at Pasco, at least within a short period thereafter. We find no error in the court's finding that the use terminated, as the need for use must have, some time prior to 1946.

Even so, says appellant, and assuming the court's finding as to the length of use was correct, the record as to the value of the use would necessitate a finding in excess of the $750. It is argued that the undisputed showing was that the value of the use of each machine was $70 per month. We find nothing in the record to compel any such finding. One Steinberg, the only witness whose testimony appears in the record, testified that during the period in question he had rented welders of larger capacity than these two for $70.50 per month,

1. The quoted language is that of Oregon Compiled Laws Annotated, 1940, § 2–407 (33), which labels it a "presumption".

2. Wigmore on Evidence, 3d Ed., Vol. II, § 437.

which was the OPA ceiling.[3] Those were "300 Amp." machines. The witness testified that he would "guess" owners of "200 Amp." machines, the size of the two here involved, were receiving "about $50 a month". He later testified that "the minute the war was over, welders were very plentiful", and qualified his testimony of a $50 per month rental by saying "I don't want to put myself definitely on that because I don't have the exact schedule of the OPA."[4] It is also contended that Government counsel admitted that the OPA ceiling was $35 a month.[5]

If we were to assume that the statement of counsel was a judicial admission, it is apparent that two welders at $35 each per month for 10½ months would equal $735. From the date of plaintiff's acquisition on October 4, 1944 to the Japanese surrender would be 10⅓ months.

█ The long and the short of it is that there is a complete absence of proof to show (a) that there was any longer use of the welders, or (b) that the reasonable value of the use exceeded $35 per month for each of them. It follows that the judgment must be and is affirmed.

---

3. Relying upon United States v. Commodities Corp., 339 U.S. 121, 70 S.Ct. 547, 94 L.Ed. 707, plaintiff tried his case on the theory that the OPA ceiling fixed the market value of the use of the welders, and the compensation payable under plaintiff's implied contract. There was no effort to establish such ceiling by evidence from official sources. Whether the case cited requires a holding not only that the recovery may not exceed the OPA ceiling price, but that it must not be less, we find it unnecessary to decide here.

4. This later testimony followed a colloquy between counsel in which reference was made to a $35 per month OPA ceiling. The witness then testified: "Q. Then do I understand correctly that $50 a month was the minimum? A. Well, since you said $35, you have records. Mine is only from recollection. I thought it was approximately $50, but I don't want to put myself definitely on that because I don't have the exact schedule of the OPA. The only thing I do remember actually, because that was something that I was involved in, before I started renting them I investigated to find out what the actual rental was I was permitted to charge, and I was told it was $70.50 per month."

5. There was a statement by counsel that the OPA maximum rental was based on a use of 240 hours a month, any excess use above this to be at the rate of 1/240th of $35 for each hour thereafter, but rental never to be less than the $35. The witness testified that in practice he found this minimum was "the minimum and maximum both"; there was no practical way of keeping track of any excess use; that rent for one shift was all he collected; he felt he was getting "all I was entitled to". There is nothing in the record to show any use of these machines in excess of 240 hours per month.